Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FEMINO-DUCEY-QUELER ORTHOPEDIC GROUP,**<br><br>　　　　　　　　　　**Plaintiff,**<br><br>　　　v.<br><br>**BLUE CROSS BLUE SHIELD OF MINNESOTA,** *et al.***,**<br><br>　　　　　　　　　　**Defendants.** | **Civil Action No. 17-12025 (ES) (JAD)**<br><br>**OPINION** |

**Salas, District Judge**

　　　Before the Court is the motion of Defendants Blue Cross Blue Shield of Minnesota ("BCBSM") and The Travelers Companies, Inc.[1] ("Travelers") (collectively, "Defendants") motion to dismiss Plaintiff Femino-Ducey-Queler Orthopedic Group's ("Plaintiff") Complaint. (D.E. No. 13). The Court also ordered the parties to show cause why this action should not be remanded to New Jersey State Court for lack of subject-matter jurisdiction. (D.E. No. 26). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, the Court finds that it has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 and will permit jurisdictional discovery.

**I.　　Background**

　　　Plaintiff is a New Jersey company providing healthcare services. (D.E. No. 1-1 ("Compl.") ¶ 1). On July 26, 2016, Plaintiff, through its employee or contractor, Frank Femino, M.D.,

---

[1]　　The Travelers Companies, Inc. was improperly pleaded as The Travelers Insurance Company. (*See* D.E. No. 8 at 2).

conducted surgical services on L.Z.; L.Z. had sustained a left foot open fracture dislocation and went to the emergency room at Clara Maass Medical Center. (*Id.* ¶ 17). L.Z. had a self-insured employee health insurance plan through her employer, Travelers; the plan was administered by Defendants. (*Id.* ¶¶ 5 & 16). Plaintiff is a non-participating, or out-of-network, provider as to the plan. (*Id.* ¶ 15). Dr. Femino determined that urgent surgery was necessary, and the hospital, "as part of the normal business practice," received authorization for the surgery. (*Id.* ¶¶ 17 & 21). After Dr. Femino performed the surgery, Plaintiff billed Defendants "for the primary surgeon charges" of $68,470, which represented the "normal and reasonable charges" for the "complex procedures performed." (*Id.* ¶¶ 20 & 22). Defendants paid Plaintiff $8,904.18. (*Id.* ¶ 23).

Plaintiff brought an action against Defendants in the Superior Court of New Jersey, Essex County, for claims of breach of contract, promissory estoppel, account stated, fraudulent inducement, and violation of New Jersey regulations governing payment for emergency services rendered by an out-of-network provider. (*See generally id.*). On November 16, 2017, Defendants removed the case to this Court based on diversity and federal question jurisdiction. (D.E. No. 1-1 ¶ 15). Plaintiff filed a motion to remand, arguing that the removal was improper because the Court lacked subject-matter jurisdiction under 29 U.S.C. § 1331. (*See* D.E. No. 5). Defendants filed an opposition, arguing that while Defendants disagreed with Plaintiff regarding the Court's federal question jurisdiction, it is undisputed that the Court had jurisdiction based on the parties' diversity of citizenship. (D.E. No. 8). Soon thereafter, Plaintiff withdrew its motion to remand. (D.E. No. 9).

Defendants subsequently filed a motion to dismiss, arguing that (i) the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA") preempts all of Plaintiff's state claims; (ii) Plaintiff cannot establish personal jurisdiction over Defendants; and (iii) Plaintiff

fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See generally* D.E. No. 13-1 ("Def. Mov. Br.")). Plaintiff filed opposition (D.E. No. 19 ("Pl. Opp. Br."), to which Defendants relied (D.E. No. 21 ("Def. Reply Br.")). On July 23, 2019, given the Court's "ongoing obligation to ensure that it may properly exercise subject-matter jurisdiction before proceeding to hear a dispute," the Court ordered the parties to show cause why the action should not be remanded to state court (D.E. No. 26 ("Order to Show Cause" or "OTSC") at 6), to which Defendants and Plaintiff responded (D.E. No. 28 ("Def. OTSC Br.") & D.E. No. 32 ("Pl. OTSC Br.")).

## II.  Discussion

### A.  Subject-Matter Jurisdiction

The two most common bases for federal subject-matter jurisdiction are (i) federal questions, which are "all civil actions arising under the Constitution, laws, or treaties of the United States"; and (ii) diversity of citizenship, when parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C §§ 1331 & 1332. The Court is satisfied that it has subject-matter jurisdiction under 28 U.S.C. § 1332.

In its Order to Show Cause, the Court pointed out that the Complaint seeks compensatory damages in the amount of $59,565.82; punitive damages in the amount of §100,000 based on claims of fraudulent inducement; and attorney's fees, costs, and interests. (OTSC ¶ 10; Compl. ¶¶ 32, 36, 41, 48 & 54). The Court noted that, where, as here, "a claim for punitive damages represents the bulk of the amount in controversy and is vital for the exercise of diversity jurisdiction, it should be given close scrutiny." (*Id.* ¶ 11). The Court further noted that "[a] request for punitive damages does not support diversity jurisdiction when that request is 'patently frivolous' and 'without foundation'" under New Jersey law. (*Id.* ¶ 12 (quoting *Quinones-Velazquez v. Maroulis*, 677 F. App'x 801, 804 (3d Cir. 2017)). Because "punitive damages are

not available under New Jersey law unless it can be proven that the defendant acted maliciously or with willful and wanton misconduct," and because "the Complaint contains no allegations that Defendants' actions were accompanied by malice or inexcusable recklessness," the Court was "wary that Plaintiff's punitive damages request cannot reasonably justify the exercise of diversity jurisdiction here." (*Id.* ¶ 14).

In response, Defendants argue that, to plead a right to punitive damages under New Jersey law based on fraudulent inducement, "a plaintiff may allege malice, intent, knowledge and other conditions of mind a person generally." (Def. OTSC Br. at 3 (citing N.J. Court Rule 4:5-8(a)[2])). Because the Complaint "alleges that [D]efendants never intended to pay a promised amount," which, according to Defendants, is sufficient under New Jersey law to support a fraudulent inducement claim. (Def. OTSC Br. at 3). Plaintiff, on the other hand, states generally that it "acknowledges that the Complaint as pleaded—in light of those concerns expressed by the Court in the Order [to Show Cause]—does not make it sufficiently likely that Plaintiff could successfully recover the punitive damages requested." (Pl. OTSC Br. at 2). In addition, Plaintiff states that it "wishes to withdraw the entirety of its [fraudulent inducement claim] including its request for $100,000 punitive damages." (*Id.*). Plaintiff argues that, because "whether federal jurisdiction ever attached in this matter is an open [question]" as evidenced by the Court's Order to Show Cause, upon abandonment of its claim for punitive damages, the amount in controversy required for the Court's diversity jurisdiction was never met. (*Id.* at 2–3). The Court disagrees.

Pursuant to 28 U.S.C. § 1446(c)(2), "[i]f removal of a civil action is sought on the basis of

---

[2] New Jersey Court Rule 4:5-8(a) states:

> Fraud; Mistake; Condition of Mind. In all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, shall be stated insofar as practicable. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally.

4

the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." But if "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). Just as a plaintiff's good-faith assertion of amount-in-controversy allegation is accepted, "the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.* at 87. But if the plaintiff contests the defendant's allegation, removal is proper only if "the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000. 28 U.S.C. § 1446(c)(2)(B); *Owens*, 574 U.S. at 88.

Here, Plaintiff's Complaint specifically seeks compensatory damages in the amount of $59,565.82 and punitive damages in the amount of $100,000.00. (*See* Compl. ¶¶ 32, 36, 41, 48 & 54). The amount in controversy is determined as of the time the complaint was filed if the demand was made in good faith. 28 U.S.C. § 1446(c)(2); *Owens*, 574 U.S. at 84. Accordingly, Plaintiff's abandonment of its claim for punitive damages after the removal does not change that determination, and the Court must address whether Plaintiff's demand of monetary relief, as stated in its Complaint, was made in good faith.

It remains the law that, "[t]he inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction." *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938) (footnotes omitted). "It must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* (emphasis added). As to punitive damages, the monetary demand does not support diversity jurisdiction when that request is "patently frivolous and without foundation" because it is unavailable as a matter of law. *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir.

1993).

Here, punitive damages are available under New Jersey law "if defendants' conduct is found to be fraudulent." *Perth Amboy Iron Works, Inc. v. Am. Home Assur. Co.*, 543 A.2d 1020, 1035 (App. Div. 1988), *aff'd*, 571 A.2d 294 (N.J. 1990). The parties do not assert that New Jersey imposes any limitation on punitive damages for fraudulent inducement claims such that Plaintiff could not recover a total amount in excess of $75,000. Under New Jersey law, punitive damages can only be *awarded* for a claim of fraud if a plaintiff shows that the defendant's conduct was "wantonly reckless or malicious," *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1230 (N.J. 1984), but a plaintiff's failure to sufficiently *allege* malice, willfulness, or wanton does not render the demand for punitive damages "patently frivolous."[3] *See Packard*, 994 F.2d at 1046. Because there is no evidence that Plaintiff's damages demand was made in bad faith, the Court finds that the amount in controversy is the total damages sought in the Complaint, which exceeds $75,000. Therefore, because the parties do not dispute that complete diversity exists, the Court has subject matter jurisdiction over this case based on diversity of citizenship.[4]

### B. Personal Jurisdiction

Having found that it has subject matter jurisdiction over this matter, the Court must now consider Defendants' motion to dismiss. Defendants argues that, pursuant to Federal Rules of Civil Procedure "12(b)(1) and 12(b)(6)," the Complaint should be dismissed because i) Plaintiffs' claims are preempted by ERISA; ii) the Court does not have personal jurisdiction over Defendants, and iii) Plaintiff fails to state a claim upon which relief may be granted. (D.E. No. 13 at 1, Def. Mov. Br. at 1).

---

[3] To be clear, the Court does not address whether Plaintiff sufficiently pleaded a claim of fraudulent inducement.

[4] Because the Court finds that it has diversity jurisdiction, the Court does not reach the issue of federal question jurisdiction.

6

As a preliminary matter, Plaintiff contends that Defendants' notice of motion fails to comply with Federal Rule of Civil Procedure 7(b)(1)(B), which requires that a motion must "state with particularity the grounds for seeking the order." (Pl. Opp. Br. at 19). Plaintiff argues that the notice of motion calls for "an order dismissing Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" but "[n]otably absent . . . is a reference that Defendants are also moving pursuant to Fed. R. Civ. P. 12(b)(2)." (*Id.* at 19; *see also* D.E. No. 13 at 1). In response, Defendants state that this "inadvertent reference" to Rule 12(b)(1), as opposed to Rule 12(b)(2), was an "obvious typo." (Def. Reply Br. at 6).

The Court will not deny Defendants' motion on this ground. In essence, Plaintiff argues that despite the discussions on personal jurisdiction in Defendants' moving and reply briefs, the omission of the pertinent subsection of rule from the notice of motion constitutes a failure "to state with particularity the grounds" for seeking an dismissal for lack of personal jurisdiction. As the Third Circuit has explained, the "purpose of [Rule 7(b)] is, of course, to give a simple and elastic procedure without too much emphasis on form." *Raughley v. Penn.*, 230 F.2d 387, 391 (3d Cir. 1956). Even the case Plaintiff relies on states that Rule 7(b)'s "particularity requirement ensures that when a motion comes before a court, the court will comprehend its basis and have 'enough information to process the motion correctly.'" *Toscano v. Dep't of Pers. of New Jersey*, 3:08-CV-3779, 2009 WL 3335065, at *1 (D.N.J. Oct. 15, 2009). Defendants' briefs not only permit the Court to "comprehend its basis" and "process the motion correctly," Plaintiff's own brief spent nearly four pages addressing Defendants' arguments regarding personal jurisdiction. (Pl. Opp. Br. at 20–23). Because Plaintiff fails to cite any case in which a motion was denied based on such a technicality, or to explain how the protested textual omission violates the objectives of Rule 7(b), the Court will proceed to the merits of Defendants' as to personal jurisdiction.

7

Under Federal Rule of Civil Procedure 4(k), personal jurisdiction over non-resident defendants may only be exercised to the extent that it is authorized by the laws of the state in which the federal court sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long arm statute permits jurisdiction over a non-resident defendant to the extent that is permitted by the United States Constitution. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 145 (3d Cir. 1992). Accordingly, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In determining whether sufficient minimum contacts exist, a court looks at "the relationship among the defendant, the forum, and the litigation." *Pinker v. Rosche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

Here, Plaintiff does not argue that the Court has specific personal jurisdiction over Defendants. (Pl. Opp. Br. at 21 ("[t]his instant matter one of general jurisdiction with both Defendants having continuous and systematic contact within New Jersey."))[5] General personal jurisdiction, "or 'all purpose' jurisdiction . . . permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.,* domicile)." *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). "A court may assert general jurisdiction over foreign (sister-state

---

[5] Plaintiff sporadically makes arguments that appear relevant to specific jurisdiction. For example, Plaintiff argues that BCBSM's "should reasonably anticipate being haled in to [sic] court in New Jersey" based on its responsibilities in "administering/processing claims" for Travelers. (*See, e.g.*, Pl. Opp. Br. at 22). Whether or not a defendant could reasonably foresee litigating a case in a forum state is part of the specific jurisdiction assessment. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). In addition, Plaintiff argues that BCBSM "actively consult[ed] and participat[ed] in discussions with New Jersey hospital and health care providers regarding the coverage of [Travelers'] insured," suggesting that jurisdiction exists because the instant matter arises out of BCBSM's contacts with New Jersey hospitals. (*See id.* at 23). However, "the specific jurisdiction determination is both claim-specific and defendant-specific." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 (concurring) (internal citations omitted). Because Plaintiff does not show the relevant claims and Defendant that its apparent arguments correspond to, the Court finds that Plaintiff has not demonstrated specific personal jurisdiction to the extent Plaintiff raised the issue.

8

or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as *to render them essentially at home* in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (emphasis added) (internal citations omitted). "*International Shoe* distinguished from cases that fit within the 'specific jurisdiction' categories, 'instances in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Goodyear*, 564 U.S. at 916 (citing *Int'l Shoe*, 326 U.S. at 318). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 924. A place of incorporation or a principal place of business is the paradigm for general jurisdiction for corporations. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

To withstand a motion to dismiss under Rule 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97. Still, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state" to support jurisdiction. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat. Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). And the Plaintiff must establish these "jurisdictional facts through sworn affidavits or other competent evidence . .

. . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Miller Yacht Sales*, 384 F.3d at 101 n.6 (citation and internal quotation marks omitted). Indeed, the plaintiff must respond to the defendant's motion with "actual proofs"; "affidavits which parrot and do no more than restate [the] plaintiff's allegations . . . do not end the inquiry." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). If the plaintiff meets its burden, the burden shifts to the defendant, who must make a compelling case that the exercise of jurisdiction would be unreasonable. *Mellon Bank*, 960 F.2d at 1226 (internal citations omitted).

Plaintiff argues that both Defendants' "continuous and systematic contacts with New Jersey" justify the Court's general jurisdiction over them. (Pl. Opp. Br. at 21). The Complaint alleges that Travelers "maintains offices and conducted significant business in the State of New Jersey," and that BCBSM is a corporation headquartered in Minnesota and "conducted and continues to conduct significant business in the State of New Jersey." (Compl. ¶¶ 2 & 4). To support their motion, Defendants filed two declarations disputing Plaintiff's allegations that BCBSM or Travelers "conducted significant business" in New Jersey. The declaration by Joel A. Mintzer, Deputy General Counsel at BCBSM, states that "BCBSM is a nonprofit health service plan corporation organized and existing under Minnesota law with its principal place of business in Minnesota." (D.E. No. 13-2 ("Mintzer Declaration" or "Mintzer Decl.") ¶ 7). The Mintzer Declaration further states that BCBSM "does not insure risk in New Jersey [,] and is not licensed to do business in New Jersey. BCBSM does not solicit or offer insurance in New Jersey." (*Id.* ¶ 8). Finally, "BCBSM does not have officers or own property in New Jersey, nor does it maintain any bank accounts in New Jersey." (*Id.* ¶ 9). Similarly, the declaration of Linda G. Scalzo, Second Vice President, Benefits at Travelers, states that "Travelers is a corporation organized under

Minnesota law" and "is headquartered in New York," with additional significant corporate offices in Connecticut and Minnesota. (D.E. No. 13-7 ("Scalzo Declaration" or "Scalzo Decl.") ¶¶ 2 & 3).

In response, Plaintiff argues, without evidentiary support, that Travelers maintains "at least one office" in New Jersey and "conducts significant business" here. (Pl. Opp. Br. at 21). Plaintiff adds that "Travelers acted as plan sponsor and/or administrator of Travelers' self-insured employee health welfare plan," which constitutes "continuous and systemic contacts with the State of New Jersey." (*Id.*). According to Plaintiff, Travelers operates offices and hires New Jersey residents to work in its New Jersey offices, and Travelers instructs their employees' doctors "to coordinate insurance benefits through Blue [ ] Cross or Blue [ ] Shield, which here would be Horizon Blue Cross and Blue Shield of New Jersey." (*Id.* at 21–22). With regard to BCBSM, Plaintiff essentially argues that BCBSM uses "its status as a Blue Cross [Blue] Shield [c]ompany/[l]icensee to secure a healthcare network for Travelers' New Jersey residents to use and in administering/processing claims" for Travelers in New Jersey. (*Id.* at 22).

As noted, Plaintiff cannot rely on pleadings alone to defeat a motion to dismiss for lack of personal jurisdiction; it must respond to Defendants' motion with "actual proofs", such as "sworn affidavits or other competent evidence." *See Time Share Vacation Club,* 735 F.2d at 66 n.9; *Miller Yacht Sales*, 384 F.3d at 101 n.6. Plaintiff does not offer any such proof showing that Defendants conduct "significant business" in New Jersey, let alone evidence sufficient to support that Defendants' presence in New Jersey is "so substantial and of such a nature as to render the corporation at home in that State." *See Daimler*, 571 U.S. at 139 n. 19. For this reason, Plaintiff fails to establish a prima facie case of general personal jurisdiction. *Miller Yacht Sales, Inc.*, 384 F.3d at 97.

Yet, even accepting Plaintiff's allegations as true, the Court is not persuaded that it has general personal jurisdiction over either Defendant. To start, despite the various references to Horizon Blue Cross and Blue Shield of New Jersey, that entity is not a party in this case. Plaintiff also cites no law to support the proposition that general jurisdiction can be established if Defendants were part of a "network," or has a certain relationship with another entity, and the "network" or the other entity has "continuous and systemic" presence in the forum state. To the extent that Plaintiff argues that the Court has general jurisdiction over Defendants under an agency theory, the Supreme Court has specifically rejected that argument in *Daimler*.

There, the plaintiffs sued a German manufacturer of luxury vehicles, DaimlerChrysler Aktiengesellscaft ("Daimler"), and its exclusive importer and distributor in the United States, Mercedes–Benz USA, LLC ("MBUSA"), in the Northern District of California. 571 U.S. at 122. The plaintiffs argued that the court may assert general jurisdiction and to hear "any and all claims" against Dailmer through MBUSA, which, according to plaintiffs, "should be treated as Daimler's agent for jurisdictional purposes." *Id.* at 123. The parties did not dispute that "Daimler's own contacts within California were, by themselves, too sporadic to justify the exercise of general jurisdiction." *Id.* at 133–34. The Supreme Court held that, even assuming that "MBUSA is at home in California" and that "MBUSA's contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 136. In so holding, the Supreme Court reiterated that a defendant's "place of incorporation and principal place of business" constitute the paradigm bases for finding a corporate defendant "at home." *Id.* at 137. The Court further emphasized that the general jurisdiction inquiry is "not whether a foreign corporation's in-forum *contacts* can be said to be in some sense 'continuous and systematic,' it is whether that corporation's *affiliations*

12

*with the State* are so 'continuous and systematic' as to render it essentially at home in the forum State." *Id.* at 138–39 (internal citation marks and alternations omitted; emphasis added). Notably, the Court recognized that "[a]gency relationships may be relevant to the existence of specific jurisdiction." *Id.* at 135 n.13. This is because "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.* But this reasoning does not necessarily apply to general jurisdiction, the Supreme Court observed. *Id.* Ultimately, the Court clarified that a general jurisdiction inquiry is not focused entirely on the "magnitude" of in-state contacts, and that "a corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* 139 n.20 (internal citations omitted). Instead, general jurisdiction "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide."

Following the Supreme Court's reasoning, the Court finds that Defendants' alleged contacts with New Jersey—namely, operating "at least one office" and "administrating/processing claims" of a self-insured employee health welfare plan—are "too sporadic to justify the exercise of general jurisdiction," and does not address Defendants' "affiliations with the State" or speak to their corporate activities in their entirety. Because the factual circumstances satisfy neither of the two "paradigm bases" for finding a corporate defendant "at home," the Court finds that Plaintiff fails to establish that the Court can properly assert general jurisdiction over Defendants. *See id.* at 137.[6]

---

[6] Because the Court's finding on personal jurisdiction is potentially dispositive of Defendants' motion to dismiss, it does not address the remaining grounds for dismissal asserted in Defendants' motion. The Court notes, however, that courts in this district have rejected similar arguments and denied motions to dismiss accordingly. *See, e.g.*, *Comprehensive Spine Care, P.A. v. Oxford Health Ins., Inc.*, No. 18-10036, 2018 WL 6445593, at *5 (D.N.J. Dec. 10, 2018).

Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, *Pinker,* 292 F.3d at 368, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 107 F.3d 1026, 1042 (3d Cir. 1997). If a plaintiff presents factual allegations that suggest "with reasonable particularity" the possible existence of the requisite "contacts between [the party] and the forum state," *Mellon Bank,* 960 F.2d at 1223, the plaintiff's right to conduct jurisdictional discovery should be sustained. *Toys "R" Us, Inc.,* 318 F.3d at 456. "Where the plaintiff has made this required threshold showing, courts within this Circuit have sustained the right to conduct discovery before the district court dismisses for lack of personal jurisdiction." *Id; see also In re Auto. Refinishing Paint Antitrust Litig.,* No. 02-1426, 2002 WL 31261330, at *9 (E.D. Pa. July 31, 2002) (denying motion to dismiss and permitting jurisdictional discovery where plaintiff made a "threshold prima facie showing of personal jurisdiction over [d]efendants"), *aff'd*, 358 F.3d 288 (3d Cir. 2004); *W. Africa Trading & Shipping Co. v. London Int'l Group,* 968 F. Supp. 996, 1001 (D.N.J. 1997) (denying defendant's motion to dismiss where the plaintiffs' "request for jurisdictional discovery is critical to the determination of whether [the court can] exercise personal jurisdiction over the defendant."); *Centralized Health Systems, Inc. v. Cambridge Medical Instruments, Inc.,* No. 89-3322, 1989 WL 136277, at *1 (E.D. Pa. Nov. 8, 1989) (holding motion to dismiss in abeyance to permit party to take discovery on jurisdiction where distribution arrangement might satisfy minimum contacts). As discussed, the Court does not find that Plaintiffs' claims are "clearly frivolous." The Court thus will allow Plaintiff to conduct limited discovery regarding whether the Court has personal jurisdiction over Defendants. *See Massachusetts Sch. of Law at Andover*, 107 F.3d at 1042.

**III.     Conclusion**

For judicial efficiency and economy purposes and given the Court's inherent power to manage its docket, the Court will allow Plaintiff to conduct limited discovery regarding whether the Court has personal jurisdiction over Defendants, including general jurisdiction and specific jurisdiction. *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) (recognizing a court's "inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it," which "provides authority to fashion tools that aid the court in getting on with the business of deciding cases"); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254(1936) (recognizing the "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). The Court reserves its decision on Defendants' motion to dismiss until jurisdictional discovery is completed. An appropriate Order accompanies this Opinion.


Date: December 23, 2020

                                                          _s/Esther Salas_____
                                                          **Esther Salas, U.S.D.J.**